Fabrication Specialists, Inc., Appellant, v. Pennsylvania Labor Relations Board, Appellee.

Argued March 5, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Jay N. Abramowitch,* with him *Miller and Murray,* for appellant.

*Forest N. Myers,* with him *James F. Wildeman, James L. Crawford* and *Anthony J. Molloy,* Assistant Attorneys General, for appellee.

OPINION BY JUDGE ROGERS, April 2, 1975:

Fabricating Specialists, Inc. appeals from an order of the Court of Common Pleas of Berks County dismissing its appeal from, and affirming, the order of the Pennsylvania Labor Relations Board that the appellant cease and desist from certain described activities and reinstate a discharged employe, Gary P. Vogel, with back pay.

The appellant employed about 35 persons in its non-union metal fabricating shop near Reading. One of the

employes, Gary P. Vogel, a fitter, earning, with overtime, from $200 to $250 weekly, was unhappy with his wages and working conditions. On the afternoon of March 5, 1973 Vogel, while at work, invited all of the company's shop employes to a meeting to be held that evening in a private home. Ten persons appeared at the meeting. Vogel described what then occurred as follows:

"Q. How long did this meeting last?

A. Approximately an hour.

Q. Could you give me the general nature of the discussion at the meeting?

A. We discussed all the shop procedures and things that we'd like to have changed and to get a grievance committee. Everyone wanted to change things and we decided to get a grievance committee to submit these things to the company. It would be better than everybody having their own grievances. And we ended the meeting on that, to try and form a grievance committee the following day.

. . .

"Q. As I understand your testimony you recessed this meeting and decided that sometime in the future you would form a grievance committee; is that correct?

A. Yes, we wanted to talk to the company the following day.

Q. This was more or less a general group discussion of problems at the shop?

A. Yes, we wanted to talk to the company the following day.

Q. This was more or less a general discussion of problems at the shop?

A. Yes.

Q. Was any election held at this time?

A. No.

Q. Were you appointed representative of the group?

A. No.

Q. Were you ever authorized in any way to act for this group of people?

A. No."

Larry Shalters, one of the attendants at the meeting, testified for the complainant:

"Q. Now, were you approached by Mr. Vogel the day of Monday, March 5, 1973 at work?

A. Yes.

. . .

Q. What exactly did he say?

A. Well, we got a couple of the guys together to have a meeting to talk over different things; that's about it, I guess.

Q. Mr. Shalters, will you please state what occurred at that meeting to the best of your knowledge?

A. The guys were more or less for helping the company to get things straightened out because— well, all of them that were there agreed on the same things or they wouldn't have been there.

"Q. What things were they?

A. Well, like when you go for a job or something like that you had to hunt a half a day for the job and the company wants the job out as fast as they can get it out. We have to waste a lot of time looking for the pieces because they are scattered all over. I believe that was the main thing. There was hardly any money involved as far as money goes. I don't think it was brought up at all, but it was just that we wanted to get together with the company to help organize—so things wouldn't be so messed up. Everybody would benefit from it in the end."

On the morning of March 6, 1973, Vogel was discharged by the president of Fabrication Specialists, Inc. Vogel filed a charge of unfair labor practices with the Pennsylvania Labor Relations Board, alleging violations by his employer of clauses (a), (b), (c) and (e) of sub-

section (1) of Section 6 of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, 43 P.S. §211.6(1) (a) (b) (c). The Board thereupon issued a complaint charging Fabrication Specialists, Inc. with violating Section 6(1) (c) by terminating Vogel's employment to discourage membership in a labor organization and of engaging in unfair labor practices "within the meaning of" Section 6(1) (a). The Board's failure to charge or find violations of subsections 6(1) (b) and 6(1) (e) was proper and not objected to by Vogel.[1]

At the hearing conducted by an examiner for the Board, the employer produced evidence which, if accepted, would have amply supported a conclusion that Vogel was discharged because he was an unproductive, although skillful, fitter, and because he kept irregular working hours and for other less serious reasons not necessary to detail. The Board rejected this evidence, as well as the testimony of Fabrication Specialists, Inc.'s president that he did not know of the employes' meeting of the previous night when he discharged Vogel, and concluded that the termination of Vogel's employment was an unfair labor practice in violation of both clauses (a) and (c) of subsection (1) of Section 6 of the Act. Those provisions read as follows:

"(1) It shall be an unfair labor practice for the employer

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this Act.

. . .

(c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."

---

1. The unfair labor practice described in Section 6(1) (b) is that of interfering with the formation of a labor organization, and in Section 6(1) (e) of refusing to bargain collectively with employe representatives.

Turning first to Section 6(1)(a), we note that it proscribes as an unfair labor practice the act of interfering with, restraining or coercing employes in the exercise of the rights granted by the Pennsylvania Labor Relations Act generally. As we have earlier pointed out, neither the complaint filed by Vogel or that issued by the Board referred to any operative provision of the Act guaranteeing rights (other than Section 6(1)(c)) as having been interfered with by the employer. The Board and the lower court concluded upon reviewing the evidence of the hearing that the employer had violated the theretofore unmentioned Section 5, 43 P.S. §211.5, which provides that "[e]mployees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection." The Board having found that Vogel's discharge was motivated by his activity in calling a meeting of employes rather than his derelictions as an employe, a fact which we cannot on this record disturb,[2] it would be our duty to affirm the conclusion that the employer had indeed violated Section 5, *had it been charged with the unfair practice described by that provision of the statute.* However, our researches have led us to *Lancaster Yellow Cab & Baggage, Inc. v. P.L.R.B.,* 371 Pa. 49, 88 A.2d 866 (1952) which holds that an employer charged with an unfair labor practice is entitled to know what provision of the Pennsylvania Labor Relations Act

---

2. Our review is limited to a determination of whether findings are supported by substantial evidence; it is the function of the Board to resolve conflicts in the evidence and judge credibility; and we must grant deference to the Board's expertise in weighing facts. *P.L.R.B. v. Sand's Restaurant Corporation,* 429 Pa. 479, 240 A.2d 801 (1968); *P.L.R.B. v. Butz,* 411 Pa. 360, 192 A.2d 707 (1963); *Canon-McMillan School Board v. Commonwealth,* 12 Pa. Commonwealth Ct. 323, 316 A.2d 114 (1974).

is the basis for the complaint and that a charge of the violation of clause (a) of subsection (1) of Section 6 does not constitute a charge of a violation of some other clause of Section 6. It follows that a charge of violation of 6(1)(a) does not constitute a violation of Section 5. The additional holding of *Lancaster Yellow Cab, supra,* was that the Board has power under the Act to order reinstatement and back pay only when the employe has been discharged in violation of clause (c) of subsection (1) of Section (6). This holding is founded on Section 8 of the Act, as amended by the Act of June 9, 1939, P.L. 293, 43 P.S. §211.8 which provides:

> ". . . If, upon all the testimony taken, the board shall determine that any person named in the complaint has or is engaged in any such unfair practice, the board shall state its findings of fact, and issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action, including reinstatement of *employes discharged in violation of clause (c) of subdivision (1) of Section (6) of this act,* with or *without back pay,* as will effectuate the policies of this act. . . ." (Emphasis added.)

It is clear therefore, that if here there was no violation of 6(1)(c), the Board was without power to order Vogel's reinstatement with back pay.

While the Board concludes that the employer violated both clauses (a) and (c), its and the lower court discussions of the facts as applied to the law are far from clear. Both tribunals seem to say that, although it appears that there was a violation of 6(1)(c), it does not much matter whether that provision was violated, because there was clearly a violation of 6(1)(a) by an act of interference with the employes' right to engage in concerted activities guaranteed by Section 5. As we have seen, not only was a violation of Section 5 not charged,

as required by *Lancaster Yellow Cab, supra,* and, if it had been, an order of reinstatement could not be founded on such an offense.

We are required therefore finally to determine whether clause (c) of subsection (1) of Section (6) was violated. Since the offense there pertinently defined is that of discrimination in regard to tenure of employment to discourage membership in any labor organization, we must determine whether conceding, as the Board found, that Vogel was discharged for calling a meeting of employes, his firing was to discourage his membership in a labor organization. Section 3(f) of the Act, 43 P.S. §211.3(f) defines a labor organization as "...*any organization* of any kind, or any agency or employe *representative committee* or plan in which employes participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work. . . ." (Emphasis supplied.) As the portions of the testimony quoted at the beginning of this opinion demonstrate, there was not in existence when Vogel was discharged or at anytime subsequent thereto, so far as this record demonstrates, any organization or committee. Vogel testified that the ten participants at the meeting arranged by him discussed conditions at their work and resolved to attempt to form a grievance committee at some future time. Vogel's witness, Shalters, testified that the discussion among the employes was just that and that its purpose was to consider means of improving efficiency in the shop, not means of dealing with their employer concerning grievances, wages or conditions of work. We hasten to repeat that had the employer been charged with the unfair labor practice of violating rights guaranteed by Section 5, the Board's cease and desist order would have been upheld. If there be a loophole in the Act which permits an employer to discharge an employe, without stricture of reinstatement with back

pay, found to have called a meeting for the purpose of suggesting the formation of a labor organization, it is one which the Legislature, not this court, has created and can cure by simply enlarging the power of the Board to order reinstatement with back pay for violation by discrimination in regard to tenure of the right of employes guaranteed by Section 5 to engage in concerted activities for mutual aid.

Having concluded that the record does not support any part of the Board's order or the order of the court below, we are compelled to, and do hereby, reverse the latter.